MATTER OF A—

In DEPORTATION Proceedings

A-11769106

*Decided by Board September 22, 1960*

Presumption of lawful admission—8 CFR 101.1(i) (formerly 4.2(j))—Entry must have occurred prior to December 24, 1952—"Phasing-out" program for Philippine workers on Guam.

(1) Alien's admission to Guam as a skilled worker occurring subsequent to December 24, 1952, does not entitle him to benefit of presumption of lawful admission for permanent residence under 8 CFR 101.1(i), formerly 8 CFR 4.2(j).

(2) Service's agreement to "phasing-out" program to permit gradual withdrawal of alien non-defense contract workers from Guam specifically requires individual applications for extension of stay. Failure to comply with this requirement places the worker in a deportable status when his authorized period of stay has expired.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—After admission as nonimmigrant laborer, remained longer.

**BEFORE THE BOARD**

**DISCUSSION:** Respondent is 31 years old, unmarried, male, alien, a native and national of the Republic of the Philippines. His last entry into the United States was at Agana, Guam, on October 18, 1958. The special inquiry officer found respondent deportable on the ground set forth above, that he was admitted as a temporary worker, authorized to remain in the United States until May 20, 1959, only, and was never given an extension. The special inquiry officer granted respondent voluntary departure in lieu of deportation. Respondent appeals to this Board.

The record does not show it, but counsel states that respondent first entered Guam in 1955 and remained until 1958, when he took a month's vacation in the Philippines. His arrival record shows him to be a "baker," destined to Tommy's Bakery, class H-2, indicating that he was admitted under section 101(a)(15)(H)(ii) of the Immigration and Nationality Act. Respondent is employed by Tommy's Bakery as chief baker of the cake and pastries section. His rate of

pay is not shown. Counsel states that respondent supervises 18 employees, determining items and quantities to be produced, securing supplies, assigning personnel and work schedules, and decorating cakes.

Respondent was not in Guam early enough to gain the benefit of 8 CFR 4.2(j), which is claimed by four other employees of the same organization, whose appeals are now before us. This regulation created the "presumption of lawful admission" for persons admitted to Guam *prior to December 24, 1952*, who were otherwise eligible, continued to reside in Guam until December 24, 1952, and did not abandon or lose this status. The significance and scope of this regulation is discussed in our decision *Matter of C—Y—L—*, 8—371 (June 10, 1959). Evidently respondent did not enter Guam until 1955, and there is no claim that he acquired permanent residence status under this regulation.

Counsel pleads, and the record establishes, that there are no replacements for respondent, or for the other employees involved in these proceedings, on the Island of Guam. The Administrator of the Guam Employment Service, Department of Labor and Personnel, Government of Guam, advised Mr. T—T—, respondent's employer, on March 2, 1960, that the Guam Employment Service had not been able to locate local candidates meeting the requirements of the position. The Service does not challenge this contention.

Counsel asserts further that respondent is not "out of status," because he came in without a contract and without a passport, that he complied with the regulations and kept his status unimpaired. It is contended, further, that in view of the policy of the Immigration Service known as the "phasing-out program" that he was not deportable at the time these proceedings were commenced.

The Board is aware of the "phasing-out program" which was the solution of the Immigration Service to the problem of "withdrawing" from Guam its alien, non-defense contract workers. Businessmen on Guam requested a grace period (preferably 7 years) within which to train Guamanians to replace alien workers who must be returned to their native lands. In August 1958 the Service announced it would no longer approve visa petitions in behalf of non-defense contract laborers, but it would approve applications for extensions of stay for such aliens then on Guam. In February 1959 the Service announced the 3-year-withdrawal plan.

Exhibit 4 is a letter from the Officer-in-Charge, Immigration and Naturalization Service, at Guam, to respondent's employer, dated March 9, 1959, informing him that he would be granted a period of 3 years from March 1, 1959, within which to effect removal of his alien workers on Guam. Mr. T— was instructed to repatriate 3 employees on March 1, 1960, 3 on March 1, 1961, and the remainder on

March 1, 1962. The second paragraph of this letter reminded the employer that he "must make timely application for extension of temporary stay of each worker, . . . prior to the expiration of the worker's present authorized stay on Guam. The worker's passport must be valid for *at least six months* beyond the requested period of extension, and you should take the necessary steps in advance of applying for such extension of stay to extend, or renew, any passport which does not meet these requirements . . . Bring the worker's Immigration Permit (Form I–94) and his passport to the immigration office with the properly prepared Form I–539." This letter made clear the necessity of securing the extensions, in spite of the "phase-out" program. News stories in the Guam *Daily News*, February 19, 1959, also cautioned employers to file extension-of-stay applications in each individual case, and stated that "group applications" would no longer be effective.

Exhibit 5, letter from respondent's Washington counsel to Guam counsel, April 8, 1959, described the program as he understood it at that time. Washington counsel states that he discussed with "the Central Office" the information received that eight of the key employees of Tommy's Bakery were to be deported April 8 and 14, 1959, and that this "caused considerable surprise and the statement was made that no non-defense employee is to be deported prior to March 1, 1960." Washington counsel so informed Guam counsel by letter and cable. Clearly, a misunderstanding occurred, through the assumption that the "phasing-out" program would apply, even to employees who did not have immigration documents in the required current condition. Indeed, respondent and other alien employees whose appeals are now here were unable to report to the immigration office with their "current valid passports and other documents," because of the revocation of their passports by the Philippine Consul at Agana, Guam, on February 26, 1959. The Immigration Service denied extensions to these persons, although Mr. T— was granted extensions for certain other of his alien employees.

Respondent's passport was revoked by the Philippine Consul as the result of a controversy between respondent's employer, a group of his former employees, the Philippine Consul, and the Department of Labor of the Republic of the Philippines. Beginning about September 1956, a ban was imposed on Mr. T— by the Office of Manpower Services, Department of Labor, Republic of the Philippines, to prevent him recruiting workers from the Philippines. This was about the time the complaint against Mr. T— was first made. The ban was provisionally lifted on July 25, 1958. In September 1958, upon receiving information that a new complaint or complaints had been filed against Mr. T—, the Office of Manpower Services at Manila reimposed the ban. It was later discovered that 4 persons

obtained passports from the Foreign Affairs Office and went to Guam to work for Mr. T— without passing the Office of Manpower Services. It is not clear from this record that respondent is one of the 4 persons who went to Guam in October 1958 under these circumstances, but it may be assumed, because respondent reentered Guam on October 18, 1958, following a vacation in the Philippines.

The claim against Mr. T— by former employees for nonpayment of overtime, and the efforts of various departments of the Philippine Government to settle these claims, and the revocation of respondent's passport are not matters within the jurisdiction of this Board. By the revocation of his passport, respondent became ineligible for a further extension of the period for which he was admitted.

The record shows that respondent's authorized period of stay expired on May 20, 1959, and that he was informed by the Immigration Service that he must depart on or before May 23, 1959. The notice that failure to depart might result in withdrawal of the privilege of voluntary departure and in deportation action was dated May 21, 1959, and was delivered to respondent on May 27, 1959. Under these circumstances, the grant of voluntary departure by the special inquiry officer was correct.

**ORDER:** It is ordered that the appeal be dismissed and that the special inquiry officer's order of November 20, 1959, be and is hereby affirmed.